SCOTT ERIK ASPHAUG, OSB # 833674
United States Attorney
District of Oregon
**ADAM E. DELPH, WSB #50312**
adam.delph@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:21-cr-00176-MC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **GARY EDWARD FRANKLIN,** | |
| Defendant. | **Sentencing: April 19, 2022, at 2:00 p.m.** |

Defendant Gary Franklin ("Franklin") etched his first threat to Adult Victim 1 (AV1) below a picture of a dismembered woman's body: "Don't think for a second that I forgot about you". Franklin's second threat detailed and depicted his fantasy of AV1: "mutilating her body and stuffing it in a trunk." Law enforcement uncovered an unsent third envelope at Franklin's residence addressed to AV1, next to a photocopy of another dismembered body. Franklin's letters, admissions, and history with AV1 also clearly indicate he targeted her because of her sexual orientation.

**Government's Sentencing Memorandum**                                                                                      Page 1

Franklin is guilty of two counts of threatening communications by mail. But the applicable guideline range is wholly inadequate and fails to fully capture the sheer terror Franklin intentionally inflicted on AV1 and her family. The damage to the victim and her family is impossible to undo, but an upward variance to the statutory maximum of 60 months' imprisonment will protect the public and hold Franklin accountable for his crimes.

## Factual Background

### A. Franklin's Threats of Violence

Franklin sent his first threat to AV1 (Attachment 1) in December 2020; he wrote: "Happy New Year you crazy nigger-loving bitch! This photo reminds me of two things: 1.) What I'd like to do to you 2.) Dianne Whipple, the dyke who was eaten by dogs. I celebrate that every January 26th."[1] Franklin displayed this image below his message:



Underneath the photo, Franklin warned: "Don't think for a second that I forgot about you".

---

[1] Diane Whipple, a member of the LBGTQ+ community, was killed in a dog attack in the hallway of her apartment on January 26, 2001. The dogs were owned by the attorneys of a high-ranking member of the Aryan Brotherhood, a white nationalist criminal organization.

**Government's Sentencing Memorandum**                                                                 **Page 2**

And Franklin did not forget about her. In May 2021, Franklin sent her another threat (Attachment 2) with a handwritten note: "A cunt ex-teacher of mine once hired a friend to start a bar-fight with me. Afterwards I fantasized about mutilating her body and stuffing it in a trunk". Below the message, Franklin depicted his fantasy:



Franklin addressed both letters to AV1 (first and last name) at her previous address in Oregon.[2] The first letter automatically forwarded to her new address, but not the second letter. Instead, the new tenants (who were also lesbian partners with children) opened the second letter without realizing the graphic photo and threat it contained. One tenant described the situation as "terrifying"; both tenants expressed concern for their personal safety and that of their children to law enforcement.

B. Franklin's History with AV1 and Her Family

AV1 knew Franklin through her previous role as a community college professor. Around 2009/2010, Franklin took one of her classes. At first, Franklin seemed to be trying to impress

---

[2] AV1 and her family moved from that address in 2020.

**Government's Sentencing Memorandum**  Page 3

her, providing her with printed materials covering feminist matters. She recalled Franklin wearing a key chain with a swastika, but she did not address it with him. Franklin subsequently attended her intercultural communications classes. During the first day of class, Franklin wore a jacket with a large swastika symbol on the back. And this was when everything changed. AV1 asked him not to wear the jacket again, pointing out it was especially offensive and insensitive to wear it in an intercultural communications class. Franklin became belligerent and shouted, "I don't tell you what to wear." AV1 described Franklin as physically huge and intimidating. She stated of Franklin at the time, "If he wanted to beat me up, he could." That was the last time AV1 saw Franklin as a student, but Franklin did not leave the area.

In 2011, AV1 was in a local bar with a male friend. After entering the bar, she noticed Franklin inside. Franklin stared at AV1, and she defiantly responded, "I see you looking at me." Franklin was wearing his swastika jacket. Her male friend stared Franklin down, and AV1 left the bar before matters escalated.

But AV1 still could not completely avoid Franklin. When she lived in the area, Franklin actually lived down the street from her; he knew she had a female partner (AW1) and a black daughter. AW1 recalled two interactions with Franklin during that time. The first time, she was walking with her daughter when Franklin approached them in the opposite direction, wearing his swastika jacket. Franklin stuck his middle finger in front of her face and said, "Extending my white male privilege, fuck you." The second time, AW1 encountered Franklin at a coffee bar known to be LBGTQ+ owned/friendly. Franklin was again wearing his swastika jacket. AW1 told Franklin his jacket was offensive and that "nobody wants to see it." Franklin replied, "Well, everybody likes me, I'm good for business." AW1 responded that people did not like him, only tolerated him.

### C. The Investigation

After receiving the first threat, AV1 reported it to law enforcement. Investigators also showed her the second letter Franklin intended for her. AV1 felt terrified and experienced daily anxiety--especially when she received mail--fearing for her safety and that of her family, which consist of a female partner and a black 14-year-old daughter. Outside of Franklin himself, AV1 also reasonably feared the influence Franklin may have on other "like-minded" individuals in the community that might seek her family out. Likewise, AW1 was terrified and frightened for the safety of their family.

AV1 provided law enforcement the names of three people she recalled having verbal altercations with in the past, listing Franklin as one of the possible suspects. Subsequently, the Oregon State Police (OSP) forensics lab found Franklin's fingerprint on the first letter.

The Federal Bureau of Investigation (FBI) executed a search warrant of Franklin's residence in May 2021. FBI uncovered a receipt for two firearms, as well as a list of firearm-related items and their corresponding prices. Agents also found personal body armor, a boot spike, multiple knives, collapsible batons, a Monkey Fist Flail (a weapon made out of knotted rope), a set of brass knuckles, a 12-gauge shotgun shell, metal chain mail, a single black mask, and a black trunk, similar to the trunk containing the mutilated body in Franklin's second letter (see examples below):

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \







FBI also uncovered piles of literature and handbooks dedicated to the topics of death, dismemberment, murder, torture, and sexually motivated killings (depicted below).  Some of

**Government's Sentencing Memorandum**                                                                      **Page 7**

their titles included "The History of Torture & Execution", "Cannibalism and Human Sacrifice", "How to Kill", and "Murder Can Be Fun."






One book was titled "The Sexual Criminal, A Psychoanalytical Study". A page in that book contained a printout from a chapter in the same book entitled: "Sadistic Homicide and Lust Murder." The words "Dianne Whipple January 26th" were hand-written in black ink on the back

side of the printed page. One image on the printout captioned: "Victim No. 1. Condition in which victim was left following sadistic orgy. Note dissection of body, disarticulation of limbs. The liver had been completed removed. Close beside the body is the killer's knife." The killer of the victim was interviewed in the book and discussed his urge to destroy women and how the urge started approximately four years before he killed his first victim. Located in the front of the book was a piece of folded notebook paper that contained AV1's prior Astoria address and an e-mail address.

Franklin also owned the book, "Medicolegal Investigation of Death: Guidelines for the Application of Pathology to Crime Investigation." Located in the front cover of the book were two envelopes: one was blank, and one had the hand-written name of AV1 and her prior Astoria address. Located with the envelopes was a photocopied image of an individual whose leg had been severed from their body, with neck and hands were bound to their knees (depicted below).



**Government's Sentencing Memorandum**                                                                                              **Page 9**

There was a receipt in one of the pages of the book, which bookmarked the image above, in the chapter "Sharp Force Injury". The image of a decapitated female in a trunk that Franklin used in his second letter was also located in this book.

Franklin's utility account listed the email address: "LonelyBiker88@gmail.com." Law enforcement recognized the number "88" as a reference to the phrase "Hail Hitler," as the letter "H" is the 8th letter in the alphabet. Open source and social media research indicated Franklin was the administrator for the website: "http://aryanfolk.com", which had 94 members. Investigators also found a Twitter account under "@aryanfolk." The biographical section of the Twitter account stated, "I run a website for White Nationalist[s]." During the search warrant, law enforcement also recovered multiple photographs of Franklin with items and clothing bearing Nazi/white supremacist symbols, as well as "ARYANFOLK.COM" business cards (depicted below):





### D. Franklin's Statements

After being Mirandized, Franklin spoke with law enforcement. When FBI informed Franklin of the basis for the search warrant, he stated the charges sounded "vaguely familiar." Franklin reported that during the first day of class with AV1, she provided the class with a situation in which a white person and a black person were treated differently while checking out at a store. When AV1 solicited the class for opinions on white privilege, Franklin called the concept "retarded." Franklin stated that AV1 confronted him on his statement, calling the word "retarded" hate speech. Franklin also talked about his version of the incident with AV1 at the local bar and that it still bothered him many years later.

Franklin admitted to sending the two threatening letters to AV1; that she had gotten "under his skin" after the incidents in class and at the bar (approximately 10 years prior). He found her address online. He printed the pictures out at Kinko's. Franklin stated he was not planning on sending a third letter.

Franklin acknowledged that he referenced the death of Diane Whipple in the letters. When asked why, he replied that he knew it would bother AV1. FBI asked if he used the Dianne

**Government's Sentencing Memorandum**                                                                        **Page 11**

Whipple incident because Whipple was a lesbian. Franklin did not provide an answer. FBI asked Franklin if he referenced Whipple because the dogs that mauled her were owned by the head of the Aryan Brotherhood. Franklin laughed. He stated that he was unaware of that fact.

### E. Franklin's Criminal History

Franklin's criminal history goes back to 1981. It includes property damage, disorderly conduct, conceal/carry of a knife, DUI, a probation violation, and menacing/intimidation. According to victims/witness involved, the menacing/intimidation conviction (2009) arose from Franklin having a falling out with one of the victims, followed by Franklin burning his clothes. Franklin and the victim then got into an argument. Franklin came after the victim with an 8-inch-long knife. As the victim drove away, Franklin stabbed the car's tire.

Franklin has applied for a concealed handgun permit on two separate occasions and was denied both times, most recently in 2017.

### The Charges & Guideline Computations

Franklin plead guilty to counts 1 and 2 of the indictment. Although there is no plea agreement in this case, the Government intends to dismiss count 3 (stalking), upon sentencing of counts 1 and 2. The guideline calculations in the Final PSR were correctly calculated.[3] Franklin has a Criminal History Category of I.

| Guidelines | Amount |
|---|---|
| Base offense level<br>U.S.S.G. § 2A6.1(a)(1) | 12 |
| Acceptance of Responsibility<br>U.S.S.G. § 3E1.1 | -2 |
| **Total Offense Level** | **10** |
| **Resulting Guideline Range** | **6-12 months** |

---

[3] As discussed below, although it may apply to this case, the Government is no longer arguing for a three-level enhancement under U.S.S.G. § 3A1.1(a). Instead, the Government requests an upward variance under 18 U.S.C. § 3553(a).

## ARGUMENT

### A. Franklin's Actions

A decade ago, AV1 appropriately confronted Franklin for displaying a symbol of hate in an intercultural studies class. She also defied his attempt at intimidation in a local bar. In response, Franklin quietly kindled an intense and violent loathing of AV1 and her community—for 10 years ("Don't think for a second that I forgot about you.") Franklin's seething hatred for AV1 finally resulted in the most terrifying threats imaginable.

There was no instigation, no provocation. Franklin's letters were not merely the brash, impromptu scribblings of a reactive extremist. He wrote his first letter in December—and then he waited. He did not send a second letter for nearly five months. And after the second letter, he was in the process of crafting a third letter. His threats were carefully handwritten. Franklin took the time to write personal messages to AV1, referencing her black daughter ("[…]you crazy nigger-loving bitch!") and her sexual orientation ("dyke"). Franklin conjured the violent mauling of Dianne Whipple to evoke a specific terror in AV1, one that would particularly resonate with her as a member of the LGBTQ+ community.

But Franklin went beyond a few sentences; he knew that a picture was worth a thousand words. For each letter, Franklin hand-selected specific photos, from specific chapters, in specific books. These images had meaning for Franklin. As he paged through titles like "The Sexual Criminal, A Psychoanalytical Study," he became inspired and scribbled thoughts of Diane Whipple. He bookmarked pages. He made copies at Kinko's. Franklin used graphic images of real, mutilated bodies that would wedge themselves in the mind of his victim long after the sting of his words faded. But Franklin conveniently explained what these images symbolized: his fantasies of AV1's death.

Franklin kindled the fantasy of killing AV1 and dismembering her body. That is what he wanted her and her family to know; he wanted them to live in terror of what may be lurking around any corner. And Franklin succeeded.

There have been two detention hearings in this case (May 25 and 26, 2021), both held before the Honorable Mustafa T. Kasubhai. In an effort to ensure Franklin's continued detention, AV1 boldly spoke at both hearings. The day after the first hearing, AV1 told the court: "Last night was the first night my partner and I had a whole night's sleep since this nightmare began." She communicated to the court that Franklin is "a mortal threat to me, my wife, and our African-American daughter. Our mere existence is an affront to him. He hates us, and he would like to see us dead…these pictures and the words he wrote will burn in my memory forever. He put me on notice with these communications that he's watching me and plans to kill me."

Franklin's calculated attempts to terrify AV1 and her family, combined with his deep desire to see AV1 suffer and die, represent specific dangers to the victim and the larger community. And while Franklin enjoys the right to espouse hateful, Nazi ideology, his right to express those beliefs ends at the threshold of sending threatening communications. It ends where terrorizing comments and graphic fantasies keep a mother and a wife from sleeping at night, fearful that Franklin could come for her family at any time.

### B. Victim Guideline Adjustment

The Final PSR includes a 3-level enhancement to the offense level under U.S.S.G. § 3A1.1(a)[4] (Hate Crime Motivation) as a Victim-Related Adjustment: "If […] the court at

---

[4] U.S.S.G. § 3A1.1(a) clearly delineates that race is but one potential motivating factor for a hate crime and that sexual orientation is another qualifying animus.

**Government's Sentencing Memorandum**                                                    **Page 14**

sentencing determines beyond a reasonable doubt[5] that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived […] sexual orientation of any person, increase by 3 levels." In applying this provision, the Ninth Circuit has explained:

> "[T]he Guideline language was developed to carry out Congress's directive in Section 280003 of the Violent Crime Control and Law Enforcement Act of 1994 ("Act § 280003"). That statute defines a 'hate crime' as 'a crime in which the defendant intentionally selects a victim ... because of [his or her] race' and directs the Sentencing Commission to provide a sentencing enhancement 'for offenses that the finder of fact at trial determines beyond a reasonable doubt are hate crimes' (Act § 280003, Pub.L. No. 103-322, 108 Stat. 1796 (1994)). Nothing in the statute specifies the degree to which the victim's race must be a motivating factor, and Guideline § 3A1.1(a) itself tracks the statutory language directly."

*United States v. Smith*, 365 F. App'x 781, 788 (9th Cir. 2010). While the government originally supported the enhancement, given the lack of case law and the burden of proof, the government will not be arguing for its application.

### C. An Upward Variance is Warranted

But even absent the lack of a specific enhancement, this is a case where the guidelines fail to adequately cover the nature of Franklin's conduct and an upward variance is warranted. Franklin's history with AV1 and his own statements make it abundantly clear that his intent to threaten her was at least partially based on her sexual orientation. When Franklin attended AV1's class, he lived down the street from her. He was aware she had a female partner, especially based on his own interactions with AW1. And in his first letter, Franklin compared

---

[5] The Ninth Circuit jury instructions (paragraph 3.5) define reasonable doubt as: "… proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt. A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence."

**Government's Sentencing Memorandum**                                                                 **Page 15**

AV1 to another "dyke" that had been violently killed, which he celebrated every year. He even noted the date of Whipple's death in one of the books found at his residence. When questioned by law enforcement, he explained that he referenced Whipple in the letter because he knew it would bother AV1--and he was right. As articulated by AV1 at the second detention hearing:

> "I knew upon opening that letter that the sender knew the terror that picture and that [(Diane Whipple)] criminal case would have on me because as a member of the lesbian community we are all – we all understand the gravity and the threat of her murder, we're all put on alert, and we all know that we're hated by some people, specifically neo-Nazis; and [Franklin] sent this to me to [inflict] as much terror on me as possible."

This, combined with the nature and repeated nature of the threats warrant an upward variance. The Court is well aware of the factors to consider when imposing a sentence: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant [and] (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;[and] (C) to protect the public from further crimes of the defendant…" U.S.S.G. § 1B1.1(c). A careful consideration of those factors in this case supports a sentence that is greater than time served.

The Court should consider every aspect of Franklin's heinous actions when crafting the appropriate sentence. The guidelines themselves cannot adequately account for the gruesome nature of Franklin's specific methods of threatening and striking fear into his victim. The guidelines also cannot adequately encompass the scope and depth of the damage that violent threats have on the LGBTQ+ community. As Magistrate Judge Kasubhai articulated after the second detention hearing:

> "[T]here is a necessary appreciation and consideration for the particular vulnerability of the victims in this charged crime that Mr. Franklin has been charged with. It is evident to this court and to me and frankly through a review of our history in this country and frankly the world that there has been a great deal of violence subjected against the LGBTQ community. Members of that community are particularly vulnerable to that violence and have been throughout history and even today. Mr. Franklin, through both the allegations and, to the extent that I'm aware, the acknowledged facts of having mailed these letters to the adult victim, targeted somebody explicitly because of their particular vulnerable status as a member of a persecuted group of people, the LGBTQ community. That heightens the additional concern that I have for the safety of the community and, in particular, the named victim. Historically, it has been far too easy for those who have perpetrated crimes and have articulated significant extreme threats of harm, including murder and torture and mutilation, upon those who have been deemed less than human. I'm not willing to take that risk and chance, given the heightened risk to the community that he targeted, the members of that community that he targeted by sending these letters that are not just simply letters but threats of violent torture, murder, and harm on…lesbian women in this community."

The sentence imposed by this Court must not only serve to hold Franklin accountable, but also to deter him and other "like-minded" individuals from threatening AV1 or anyone else in the LGBTQ+ community.  AV1, her family, and her community deserve to be protected by the law.  They deserve to sleep at night, knowing the laws that were written to protect them will be fully enforced.  They deserve to know that men like Franklin will not be allowed to cowardly hide behind letters—that the law will expose them and hold them accountable.

Only an upward variance from the advisory guideline range, pursuant to 18 U.S.C. § 3553(a), can fully account for the breadth of Franklin's offenses and encompass the danger and severity of his conduct.  The Government is not requesting consecutive sentences for counts 1 and 2; a sentence of 60-months' imprisonment is sufficient but not greater than necessary.

\ \ \

\ \ \

\ \ \

**Government's Sentencing Memorandum**                                                                                           **Page 17**

**Conclusion**

The government recommends that the Court impose a sentence of 60 months' imprisonment, three years of supervised release, appropriate restitution,[6] and a $200 fee assessment.

Dated: April 14, 2022

Respectfully submitted,

SCOTT ERIK ASPHAUG
United States Attorney

s/ *Adam E. Delph*
ADAM E. DELPH
Assistant United States Attorney

---

[6] The Government will supplement this memorandum with relevant restitution information from AV1 at or before the sentencing hearing.

**Government's Sentencing Memorandum**  **Page 18**